OPINION
Defendant-appellant Stanley Charles Lewis appeals his conviction and sentence entered by the Stark County Court of Common Pleas on one count of complicity to commit felonious assault, in violation of R.C. 2923.03, with firearm specification. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
In early 1998, Jeff Parker was living with appellant and appellant's girlfriend, Tammy Heilman, in East Canton, Ohio. Because the relationship between Parker and appellant had disintegrated, Parker decided to move out of the residence. At approximately 1:30 a.m. on March 27, 1998, Parker and two friends, Jason Eddy and Lamont Williams, proceeded to the East Canton residence in order for Parker to collect his belongings. Appellant was at the residence when the three men arrived. Ultimately, an argument ensued between appellant and Parker. Appellant and Parker, continuing to argue, moved outside onto the porch of the residence. Leo Knighton appeared from the side of the house and joined the argument. Knighton pulled out a .12 gauge shotgun, pointed the weapon at Parker's face, and threatened to shoot him. Knighton eventually put down the shotgun, however, the argument continued. Appellant suggested they take this dispute elsewhere. Eddy persuaded Parker to leave the residence and collect his belongings at another time. As Parker, Eddy and Willliams returned to their vehicle, Eddy observed Knighton place the shotgun in Heilman's Ford Explorer. While they drove toward Canton, Parker and his friends noticed appellant and Knighton sitting in the Explorer, which was parked on a side street. Appellant pulled the vehicle out of the side street and followed Parker's vehicle. Parker, Eddy, and Williams decided to drive to Williams' mother's house on 11th Street, NW, in Canton. When they arrived, Parker exited the vehicle, approached appellant, and recommenced the argument. Parker then walked to the passenger's side of the vehicle and began arguing with Knighton. With the shotgun in hand, Knighton exited the Explorer and pointed the weapon at Parker's face. After Parker dared him to shoot, Knighton lowered the gun and fired. Pellets from the blast hit Parker in his lower and upper legs. Knighton and appellant returned to the Explorer. As they drove away, appellant yelled he and Knighton would kill them. Sergeant Lester Baroni of the Canton Police Department was assigned to investigate the shooting. After learning about appellant's involvement in the incident, Sergeant Baroni contacted appellant. Baroni had two separate telephone conversations with appellant later in the morning on the day of the shooting. Initially, appellant denied knowing Knighton and being present when Knighton fired the shot. During the second conversation, Sergeant Baroni confronted appellant with the fact appellant's denial did not coincide with the statement Parker gave to Officer Marino. Thereafter, appellant admitted knowing Knighton, but continued to deny his presence during the shooting. Sergeant Baroni tape-recorded both of the conversations. After the shooting, Knighton contacted appellant's sister, Christina Reardon, with whom Knighton and appellant worked, and told her he and appellant had been involved in a shooting. Subsequently, Reardon contacted Sergeant Baroni and relayed the information to him. On May 18, 1998, the Stark County Grand Jury indicted appellant on one count of complicity to commit felonious assault, in violation of R.C. 2923.03, with a firearm specification. A jury trial commenced on June 29, 1998. After hearing all the evidence and deliberations, the jury found appellant guilty as charged. The trial court sentenced appellant to a term of imprisonment of four years on the complicity count. The trial court ordered the sentence be served concurrently with the mandatory three year term for the firearm specification. The verdict and sentence were memorialized in a Judgment Entry dated July 7, 1998. It is from this conviction and sentence appellant prosecutes this appeal, raising the following assignments of error:
 I. DEFENDANT-APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY HIS TRIAL COUNSEL'S FAILURE TO PROPERLY OBJECT TO THE ADMISSION OF THE TAPE-RECORDED TESTIMONY CONTAINING INADMISSIBLE HEARSAY WITH THE RESULT OF PREJUDICE IN CONTRAVENTION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 II. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ERRONEOUSLY ADMITTED THE TAPE-RECORDED TESTIMONY CONTAINING INADMISSIBLE HEARSAY INTO EVIDENCE.
 III. THE JURY VERDICT FINDING DEFENDANT-APPELLANT GUILTY OF COMPLICITY TO FELONIOUS ASSAULT WAS NOT SUPPORTED BY THE EVIDENCE; IN THE ALTERNATIVE, THE JURY VERDICT FINDING DEFENDANT-APPELLANT GUILTY OF COMPLICITY TO FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Any other facts relevant to our discussion of appellant's assignments of error shall be contained therein.
 I II
Because our determination of appellant's first and second assignments of error require similar analysis, we shall address said assignments together. In his first assignment of error, appellant maintains he was deprived of his right to effective assistance of counsel as a result of trial counsel's failure to properly object to the admission of the tape-recorded conversations between him and Sergeant Baroni which contained inadmissible hearsay. In his second assignment of error, appellant claims the trial court erred in admitting the aforementioned recordings. A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to the appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, supra at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545,558, citing Lockhart v. Fretwell, supra. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." State v. Bradley, supra at 143, quoting Strickland v. Washington, supra at 697. Accordingly, we will focus our attention on the second prong of the Strickland test. Both tape recordings contain conversations between Sergeant Baroni and appellant later in the morning on the day of the shooting. During the second conversation, the sergeant referred to the statement Parker gave to Officer Marino shortly after the incident. Sergeant Baroni read Parker's statement from the police report. The conversation between Baroni and appellant progressed as follows:
Q. [Baroni]: You heard from [Jeff Parker]?
A. [Appellant]: No, he hasn't called or nothing.
 Q. You know, I was looking over . . . I haven't talked to Jeff yet. I was just at the hospital. He had already gone home. I was reading the officer's report and talked to him this morning.
A. Right.
 Q. His story is quite a bit different than what you told me.
A. What's that?
 Q. He said that at Hot Shots you and [Leo Knighton] got in an altercation with him outside?
A. No.
Q. Then he said . . .
 A. I never got in no altercation with him. That man lived here with me. I shot pool with that man last night.
 Q. I am just telling you what he told the officers, what they have in black and white in their report. He said you and Leo like I say, got in an altercation with him and then he left. I don't recall exactly what it said in the report, but he left. He went to get two of his buddies and he's saying that you were there when he got shot.
* * *
Q. Hang on, let me get my report here . . .
* * *
 Q. He said you guys asked them to step outside, then it became a physical altercation. He said he leaves the scene. You guts attempted to jump on him. Then he said he went to pick up two of his buddies and they went to your house on Woodlawn Park after he picked up his two buddies?
A. Yeah. I was here.
* * *
 Q. Well, it goes on here. When they arrived at Woodlawn Park Leo and [appellant] got . . . you guys got involved in another physical altercation there. Then he says they all leave and they go over to [Lamont Williams'] house. Says when they got there that you and Leo were waiting for them?
Transcript of Proceedings, Vol. 2 at 266-269.
Appellant asserts "the State relies upon the purported truth of Jeff Parker's statements, as read by Sgt. Baroni, in order to establish that Appellant he was not being truthful in response." Brief of Appellant at 11. Appellant maintains trial counsel should have objected to the admission of these taped conversations because the statements contained therein were clearly hearsay and do not fall within any of the exceptions to the general hearsay rule. At trial, Eddy and Williams, who were eyewitnesses to the events surrounding the shooting, testified appellant and Parker had been arguing over the course of the evening prior to the shooting. Eddy and Williams recounted appellant's following Parker, Williams, and Eddy to Williams' house. As Knighton and appellant drove away from the scene following the shooting, appellant threatened he and Knighton would kill Parker and his friends. These witnesses testified prior to the State's playing the tape recorded conversations for the jury. Additionally, both witnesses were subject to cross-examination. Because the witnesses' testimony of the actual shooting and the events leading up to the shooting is more than sufficient to demonstrate intent and/or lack of accident, the evidence relative to appellant and Parker arguing at Hot Shots as presented through the tape recordings is merely cumulative. Assuming arguendo they are hearsay, we find the result of the trial was not unreliable as a result of their admission and find appellant was not prejudiced. Accordingly, we find appellant has failed to satisfy the second prong of Strickland. We now turn to appellant's assertion the trial court erred in admitting the tape-recorded conversations. Because appellant's trial counsel failed to object to the tape recorded statements, we must review the trial court's admission of the recordings under the plain error doctrine. See, State v. Maurer (1984), 15 Ohio St.3d 239. In order to prevail under a plain error analysis, appellant bears the burden of demonstrating the outcome of the trial clearly would have been different, but for the error. Crim.R. 52(B). Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91. As determined, supra, appellant has failed to establish the result of the trial was unreliable due to trial counsel's failure to object. Because appellant's success under a plain error analysis requires his demonstrating the outcome of the trial clearly would have been different, but for the error, which is a higher standard to satisfy than that of an ineffective assistance of counsel claim, we find appellant is unable to satisfy his burden. Appellant's first and second assignment of errors are overruled.
 III
Appellant's final assignment of error raises insufficiency and manifest weight of the evidence claims. In State v. Jenks (1981),61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380,387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. The jury convicted appellant of complicity to commit felonious assault, in violation of R.C. 2923.03, which provides: (A) No person, acting with the kind of culpability for the commission of an offense, shall do any of the following:
* * *
(2) Aid or abet another in committing the offense;
 The trial court defined the terms "aid" and "abet" for the jury. The trial court explained, "Aid means to help, assist or strengthen. Abet means to encourage, counsel, incite or assist." Tr., Vol. 2 at 302. Appellant's co-defendant, Leo Knighton, was convicted of felonious assault, in violation of R.C. 2903.11, which provides: (A) No person shall knowingly:
(1) Cause serious physical harm to another . . .;
 (2) Cause or attempt to cause physical harm to another by means of a deadly weapon . . .
Appellant maintains the State did not present sufficient evidence to prove beyond a reasonable doubt the culpable mental state of "knowingly" for the principal offense of felonious assault. Appellant further contends the State did not present sufficient evidence to establish appellant aided and abetted Knighton. The trial court defined "knowingly" as follows: * * * A person acts knowingly regardless of his purpose when he is aware this [sic] his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature.
A person has knowledge of circumstances when he is aware that such circumstances probably exist. Knowingly means that a person is aware of the existence of the facts and that his acts will probably cause a certain result or be of a certain nature.
Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the Defendant an awareness of the probability that his conduct would result in causing physical — aiding or abetting another [sic] would result in causing physical harm to another by means of a deadly weapon.
Tr., Vol. 2 at 300-301.
At trial, the evidence revealed, appellant engaged in a confrontation with Parker at the East Canton residence. Knighton joined the argument. During the dispute, Knighton brandished a shotgun. After Parker and his friends left the residence, appellant and Knighton followed the group to Williams' mother's house in Canton where appellant reinitiated the verbal dispute. The evidence presented at trial also revealed appellant observed Knighton threaten to shoot Parker. When appellant and Knighton entered the Explorer and pursued Parker and his friends, appellant knew Knighton had placed the shotgun in the truck. Appellant and Knighton arrived at the Canton address and again entered into a verbal confrontation with Parker. Knighton exited the vehicle with the shotgun in hand. Appellant observed the co-defendant place the weapon in Parker's face and watched as Knighton lowered the gun and fired. As appellant and Knighton fled the scene, appellant threatened to kill Parker and his friends. We find the foregoing evidence provides sufficient indicia appellant knowingly aided and abetted his co-defendant. Based upon the facts noted supra, and the entire record, we do not find the jury's verdict was against the manifest weight of the evidence. The jury was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. We do not disagree with the jury's resolution of the evidence. Appellant's third assignment of error is overruled.
The conviction and sentence of the Stark County Court of Common Pleas is affirmed.
By:
Hoffman, P.J. Farmer, J. and Edwards, J. concur.